Bindo DI GREGORIO, Plaintiff,

v.

**N. V. STOOMVAART MAATSCHAPPIJ "NEDERLAND", Defendant and Third-Party Plaintiff,**

v.

**UNIVERSAL TERMINAL & STEVEDORING CORP., and GTE International, Inc., Third-Party Defendants.**

No. 71 Civ. 2729.

United States District Court, S. D. New York.

July 9, 1975.

Martin Lassoff, Zimmerman & Zimmerman, New York City., for di Gregorio.

William M. Kimball, Burlingham, Underwood & Lord, New York City, for "Nederland".

Alexander Green, Brown Quencer & Commette, Robert C. Heidell, New York City, for Universal Terminal.

Joseph Arthur Cohen, Alexander, Ash & Schwartz, New York City, for General Telephone and GTE.

## OPINION

GRIESA, District Judge.

This longshoreman's personal injury action was tried to a jury, resulting in a verdict for plaintiff in the amount of $50,000 based upon an unseaworthy condition on defendant Nederland's vessel, the NEDER WESER. The jury further found in effect that it was negligence on the part of third-party defendants Universal Terminal & Stevedoring Corp. and GTE International, Inc. which actually caused plaintiff's injury.

Under this verdict Nederland would be liable to plaintiff, but would be entitled to indemnity from Universal and GTE.[1]

Universal and GTE move under Fed.R. Civ.P. 50(b) for judgment notwithstanding the verdict. These motions are granted.

### I.

On April 11, 1970 the NEDER WESER was being loaded in Brooklyn, New York. The stevedoring work was being performed by Universal.

Plaintiff, an employee of Universal, was working in Number 2 Hatch and was walking on top of certain crates, preparing to assist in the placement of a crate then being lowered into the hatch. The top of one of the crates collapsed under plaintiff's weight and plaintiff was injured as a result.

The jury was asked to return a special verdict, and found that an unseaworthy condition on the vessel caused plaintiff's injury, that plaintiff was not contributorily negligent, and that the amount of damages to plaintiff was $50,000.

### II.

The crate causing the injury was shipped on the NEDER WESER by third-party defendant GTE.

The evidence shows that this crate was one of four crates which were shipped by GTE on the NEDER WESER. Two of these crates contained 8′ diameter parabolic antennas and two of the crates contained mountings for these antennas. The antennas and their mountings had been ordered from GTE by Oilfield Supplies and Services for use in Saudi Arabia. GTE referred this order to its subsidiary, Lenkurt Electric Co. of Canada, Ltd. Lenkurt in turn purchased the antennas and the mountings from another Canadian company—Ainslie Antenna Co., Ltd. of Montreal.

In the purchase order to Ainslie, there was the notation "Export Packing". Ainslie made a special charge for such packing.

GTE's freight forwarder arranged to have the four crates picked up from Ainslie. Ainslie delivered the four crates F.O.B. Montreal. A trucker hired by the freight forwarder transported the crates to Brooklyn and delivered them to Universal, which loaded the crates onto the vessel.

Beyond placing the notation "Export Packing" on the purchase order, neither GTE nor Lenkurt gave Ainslie any instructions as to how the equipment was to be packed. Neither GTE nor Lenkurt made any inspection of the crate at any time. The packing was entrusted entirely to Ainslie.

The evidence at the trial indicated that the crate in question was construct-

---

1. Following the trial, counsel for Nederland submitted an affidavit showing that Nederland's counsel fee and disbursements for defending plaintiff's claim amounted to $3,080. Nederland includes this amount in its indemni-ty claim. There is no dispute as to the reasonableness of the $3,080. But, for the reasons set forth in this opinion, Nederland is not entitled to indemnity in any amount.

ed of a composition material called "particle board" strengthened to some extent by wooden battens. Nederland introduced expert testimony at the trial to the effect that particle board was an inadequate material for the crate, unless strengthened by more wooden battens that the crate apparently contained. The expert's specific recommendation was that additional interior battens should have been used in the construction of the crate.

In its special verdict the jury found as follows:

(a) Universal breached its warranty of workmanlike performance to Nederland and such breach was a proximate cause of plaintiff's injury. The jury found that such breach was not the result of any negligent act of plaintiff (an employee of Universal) but that such breach resulted from the fact that Universal knew or should have known of a defect in the crate.

(b) GTE was negligent and that such negligence was a proximate cause of plaintiff's injury.

(c) Ainslie Antenna Co., Ltd. was negligent and such negligence was a proximate cause of plaintiff's injury.

### III.

■ Universal's motion for judgment notwithstanding the verdict is grounded on the assertion that there was a total lack of proof that there was any defect in the crate which was obvious to Universal or which should have been detected by Universal. At the oral argument of the motion, counsel for Nederland stated that Nederland does not oppose Universal's motion. It is therefore granted.

### IV.

Nederland's main case for indemnity has always been pitched against GTE, whose motion for judgment notwithstanding the verdict Nederland strongly opposes.

Nederland advances two basic theories against GTE. First, Nederland argues that Ainslie was negligent in the construction of the crate and that Ainslie's negligence must be imputed to GTE. Second, Nederland argues that GTE itself was negligent in selecting Ainslie to do the packing, in failing to give Ainslie proper instructions regarding packing, and in failing to inspect the packing after it was carried out by Ainslie.

The rule governing the responsibility of a shipper such as GTE is contained in Section 4(3) of the Carriage of Goods by Sea Act, 46 U.S.C. § 1304(3), which provides:

"(3) The shipper shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault, or neglect of the shipper, his agents, or his servants."

■ Dealing with Nederland's first theory against GTE—i.e., the theory of imputing Ainslie's negligence to GTE, we start with the finding of the jury that Ainslie was negligent in the construction of the crate. There is ample support for this finding in the evidence. But the question which must then be resolved is whether GTE can be held liable under the statute for Ainslie's negligence. I hold that it cannot.

The shipper's liability is expressly limited by the statute to situations where there is some act, fault, or neglect on the part of the shipper, his agents, or his servants. Nederland has never argued that Ainslie falls in any of the specified categories. Ainslie clearly was not the shipper or the agent or the servant of the shipper, GTE. Ainslie was merely the seller of goods to Lenkurt. There is no indication whatever that GTE or Lenkurt exercised any control over the conduct of Ainslie in the production or packaging of the antennas and mountings. Under these circumstances there would be no basis for holding Ainslie to be the agent or servant of either GTE or Lenkurt. *Restatement of Agency (2d Series)* § 2.

■ Nederland's argument, however, is that the negligence of Ainslie should be imputed to GTE on the theory that GTE had a non-delegable duty to ensure that the antennas and mountings were properly packed. This theory is contrary to the express wording of the statute, and must be rejected.

The other theory of Nederland against GTE is that GTE itself was negligent. The jury found that it was. If such finding can be sustained, there would clearly be a basis under the statute for liability of GTE to Nederland. *Williamson v. Compania Anonima Venezolana de Navigacion*, 446 F.2d 1339 (2d Cir. 1971), *cert. denied*, 404 U.S. 1059, 92 S.Ct. 739, 30 L.Ed.2d 746 (1972).

Nederland contends that GTE was negligent in the selection of Ainslie, and was further negligent in failing to give detailed instructions to Ainslie as to the method of packing and in failing to inspect the packing after Ainslie had carried it out.

■ Nederland greatly exaggerates, in my view, the proper scope of GTE's responsibilities. As already described, there is no evidence to suggest that Ainslie occupied any other relationship to GTE or Lenkurt than the normal supplier or seller of goods. A buyer normally has no duty under the law to supervise the seller in the process of producing or packing the purchased goods.

■ In the present case, Lenkurt ordered the antennas and mountings to be packed for shipment to a customer abroad. This is a normal commercial practice, and it is not attended by any duty on the part of GTE or Lenkurt to intervene and supervise or inspect the packing. A purchaser such as GTE or Lenkurt would naturally trust Ainslie, the supplier of these large radio antennas, to determine the proper method of packing. Moreover, as to the sufficiency of the notice "Export Packing", there is no suggestion as to how this would fail to apprise Ainslie of the obvious fact that these crates would be conveyed by truck and ship and would need to be handled by persons in loading and unloading.

The only conceivable reason for imposing some additional duty on GTE or Lenkurt might be some circumstance putting GTE or Lenkurt on notice of inability or incompetence on the part of Ainslie to do the proper packing. The question of GTE's negligence was submitted to the jury on this basis, and on this basis alone. As already noted, the jury found that GTE was negligent.

I now hold that there was not the slightest evidence to support such a finding. There was no evidence whatever to indicate that GTE or Lenkurt had notice of anything which would give them reason to believe that Ainslie was incapable of packing these antennas properly for export shipping as directed. Indeed, the only evidence on the point is that Lenkurt had previously ordered such antennas from Ainslie, both for domestic and export shipment, and never experienced any difficulties.

Nederland brought out from the testimony of a GTE employee that GTE did not have an expert packaging department and did not employ a packaging engineer or expert. An employee of Lenkurt testified, on the other hand, that Lenkurt had a shipping department responsible for packing all items produced at Lenkurt's factory. Nederland's counsel questioned each of these witnesses extensively to show their personal ignorance of packaging procedures.

This evidence was all, in the last analysis, extraneous, and would probably have been excluded at the time it was offered, if the Court had arrived at the proper formulation of GTE's responsibility. I believe that, under the correct view of the case, neither GTE nor Lenkurt had any duty to send packers or packaging experts to Ainslie to perform or supervise the packing of these antennas and mountings. To impose a duty upon a purchaser of goods to exercise surveillance over the packaging by the seller would be a totally unjustified interference with normal and sound commercial practice.

■ There was a suggestion at the trial that some liability might attach to GTE because of the fact that GTE's freight forwarder, and a trucker employed by GTE, assumed control of the crates after delivery by Ainslie in Montreal. However, the mere taking of title or control by GTE's agents does not mean that these agents were negligent. And there was no showing whatever of any basis in law or fact for holding them negligent. There was no evidence to indicate that they (any more than Universal) knew or should have known of inadequate battens inside the crates or other defect in the packing.

### Conclusion

The motions of third-party defendants Universal Terminal & Stevedoring Corp. and GTE International, Inc. for judgment notwithstanding the verdict are granted.

The Clerk is directed to enter judgment in favor of plaintiff against defendant Nederland in the amount of $50,000, and in favor of third-party defendants dismissing the third-party claims. Costs will be taxed by the Clerk.