OPINION OF THE COURT
Leon D. Lazer, J.
The principal issue on this motion by plaintiffs to amend their complaint is whether the doctrine of strict liability in tort encompasses the activities of repairers. The action itself *771 arises from injuries incurred by plaintiff Elias Nickel when his employer’s forklift truck, which had been repaired by the defendant, exploded. In their complaint the plaintiffs alleged that the accident occurred because of defendant’s negligent repair of the truck, but by their current motion they seek to add a cause of action which would plead defendant’s responsibility for the explosion under the doctrine of strict liability in tort. In a second branch of the motion, plaintiffs also seek to increase the amount of their ad damnum clause. The defendant argues that strict liability precepts are not applicable to repairers.
Under the traditional doctrine of strict liability in tort, a manufacturer who places a defective product on the market may be held liable for damages incurred by virtue of the product if it was placed on the market in the regular course of business (Restatement, Torts 2d, § 402 A). Although section 402 A uses the specific term "seller”, comment f makes it apparent that the rule applies to any manufacturer, wholesale or retail dealer, or distributor who is engaged in the business of selling products for use or consumption. Under the strict products liability doctrine as it exists in New York (see Codling v Paglia, 32 NY2d 330), defendants can be manufacturers, distributors, retailers, processors and makers of component parts who sell the product alleged to have caused injury (1 PJI 2:141), in essence, those responsible for placing the defective product in the marketplace (Queensbury Union Free School Dist. v Walter Corp., 91 Misc 2d 804). The prevailing view nationwide is that the doctrine of strict products liability is not applicable to providers of services, including repairers (see, e.g., Raritan Trucking Corp. v Aero Commander, 458 F2d 1106; Lemley v J & B Tire Co., 426 F Supp 1378; Harzfeld’s, Inc. v Otis Elevator Co., 114 F Supp 480; Hoffman v Simplot Aviation, 97 Idaho 32; 3B Frumer and Friedman, Products Liability, § 16A[b][vi]; Ann., 29 ALR3d 1425; Note, 8 Pac LJ 865). The Restatement itself is quite clear on the issue since it provides explicitly for a repairer’s liability in negligence (Restatement, Torts 2d, § 404) while limiting the scope of the strict liability section (Restatement, Torts 2d, § 402 A) to sellers.
Nevertheless, plaintiffs argue that the opinions in Jackson v Melvey (56 AD2d 836) and Martin v Dierck Equip. Co. (43 NY2d 583) support their contentions that strict liability is applicable to repairers. In Jackson, the defendant owner and *772 the defendant operator of the vehicle in which the plaintiff passenger was injured brought a third-party action against the manufacturer and the dealer alleging that the accident occurred by reason of a defect in the steering mechanism which caused the steering wheel to lock. At the close of the third-party plaintiffs’ case the trial court dismissed those causes of action in the third-party complaint sounding in negligence for failure of proof. At the close of the entire case the remaining cause of action for breach of warranty was dismissed as against the dealer as well. The jury returned a verdict in favor of the plaintiff against the owner and operator in the main action and against the manufacturer in the third-party action and apportioned liability among all three. The Appellate Division, Second Department, reversed the interlocutory judgment and granted a new trial as between the third-party plaintiffs and the dealer on the issue of liability for breach of warranty. In its opinion the court noted that the dealer had "inspected and/or repaired the vehicle just one week after purchase and two weeks prior to the accident” and advised the owner "that the vehicle had been adjusted or repaired and that it was in good operating condition.” The jury, the court concluded, "could have found that [the dealer], which held itself out as a repairer of automobiles and provided servicing and repairs under the new car warranty, failed to make the proper repairs”. (Jackson v Melvey, supra, p 836.) Plaintiffs contend that the Jackson court incorrectly labeled the cause of action against the dealer a breach of warranty action rather than one for strict products liability and in support of this position they cite Martin v Dierck Equip. Co. (supra).
In Martin, as here, the plaintiff was injured while operating a forklift truck belonging to his employer, but his action was against the manufacturer and the distributor for negligence and breach of warranty. The court held that the warranty cause of action was in reality a claim in strict products liability and made the following observation: "[A] plaintiff who is not in privity with the seller of the product which is alleged to have caused his injury possesses a cause of action in negligence or strict products liability as opposed to what has often been incorrectly labeled breach of warranty.” (Martin v Dierck Equip. Co., supra, pp 589-590.)
Patently, the court’s comment was predicated on the lack of privity between the manufacturer and the remote user plaintiff (see Victorson v Bock Laundry Mach. Co., 37 NY2d 395).
*773 Where there is privity a plaintiff may have a cause of action sounding in either strict products liability or warranty or both (see, e.g., Cerrato v Crown Co., 58 AD2d 721). The third-party plaintiff owner in Jackson was in obvious privity with the dealer and the third-party plaintiff operator may well have been a person to whom warranties have been extended by the liberalized provisions of section 2-318 of the Uniform Commercial Code. Thus, it would appear that the court did not mislabel the cause of action.
The more significant difference between Martin and Jackson as they relate to the instant case lies in the fact that in Martin there was no claim that the offending product had been defectively repaired and no repairer was sued while in Jackson the third-party defendant was a repairer as well as a seller and the action encompassed both initial product defect and the failure to properly service or repair. In a proper case, a hybrid service-sale transaction can give rise to a cause of action for breach of warranty or strict products liability if the sales aspect of the transaction predominates and the service aspect is merely incidental (see, e.g., Schenectady Steel Co. v Trimpoli Gen. Constr. Co., 43 AD2d 234, affd 34 NY2d 939; Perlmutter v Beth David Hosp., 308 NY 100; Milau Assoc. v North Ave. Dev. Corp., 56 AD2d 587; Jerry v Borden Co., 45 AD2d 344; Newmark v Gimbels, 53 NJ 62; Sales, The Service-Sales Transaction: A Citadel Under Assault, 10 St. Mary’s LJ 13). In Jackson, the sales aspect of the transaction predominated since it involved the sale of a new vehicle with a defective steering mechanism and the services and repairs rendered by the dealer to correct the steering problem were provided under the new car warranty only one week after the purchase. Had the third-party defendant in Jackson simply been a repairer and not also a dealer, and had there been no sale, the third-party plaintiffs would have had no cause of action for breach of warranty (see Aegis Prods, v Arriñex Corp. of Amer., 25 AD2d 639) or strict products liability (see cases, supra). The current defendant is nothing more than a repairer and thus the motion to add a new cause of action must be denied.
Plaintiffs’ effort to amend the ad damnum clause to assert monetary damages due to injuries whose severity was not heretofore known is insufficiently supported. A physician’s affidavit is needed to relate the additional injury to the *774 occurrence which is the subject matter of the suit (Davis v City of Troy, 57 AD2d 990).
The motion is denied without prejudice to a renewal of the branch of it which relates to the ad damnum clause.