**Sahadeo BICKRAM, Plaintiff,**

v.

**CASE I.H., BGS Leasing Systems, Inc., Kustom Equipment Rental, Kustom Auto & Equipment Co., and Kustom Crane Service, Inc., Defendants.**

**No. 86 CV 1939.**

United States District Court,
E.D. New York.

May 15, 1989.

---

Michael Weinberger, New York City, for plaintiff.

Barry, McTiernan & Moore, New York City, for Kustom.

Quirk & Bakalor, P.C., New York City, for I.H.

Eugene H. Lieber, New York City, for BGS Leasing Systems, Inc.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendants Case I.H. ("Case"), BGS Leasing Systems, Inc. ("BGS"), Kustom Equipment Rental, Kustom Auto & Equipment Co., and Kustom Crane Services, Inc. (all referred to as "Kustom") move this Court, pursuant to Fed.R.Civ.P. 56, for an order granting summary judgment. Because the amount in controversy exceeds $10,000 and because the plaintiff is a citizen of a foreign nation, Case is a Wisconsin corporation, and BGS and Kustom are New York corporations, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

## FACTS

The undisputed facts are as follows. On July 15, 1985, plaintiff Sahadeo Bickram was injured when he was struck by the arm of a Case Loader/Backhoe 680C ("backhoe") during the course of his employment with third-party defendant Villa's of Forest Hills ("Villa"). The injury occurred while plaintiff was assisting a co-employee, James Campbell, in determining whether a hose located on the left arm of the backhoe's bucket had been properly repaired. Campbell, the operator of the backhoe, asked plaintiff to stand on the left side of the backhoe and observe the hose on the backhoe's left arm while Campbell raised and lowered the bucket. To operate the bucket, Mr. Campbell did not enter the cab of the backhoe. Rather he stood on the ground to the right of the backhoe, while plaintiff stood to its left. Mr. Campbell did this despite a warning on the dashboard inside the cab of the backhoe that stated: "Warning—Operate Backhoe from Operator's Seat Only."

When the bucket was raised, plaintiff in an apparent attempt to gain a better view of the hose, stooped down, placing his head and neck under the arm of the backhoe. Mr. Campbell, unaware that plaintiff had placed himself in that position, lowered the arm of the machine. The arm then struck plaintiff causing serious injuries.

The backhoe, manufactured by defendant Case in the early 1970's and sold in 1975, was resold several times before Kustom bought it. In September 1981, Villa decided to buy the backhoe from Kustom. Villa elected to have the purchase of the backhoe financed by BGS in conjunction with a sale and lease back arrangement entered into with BGS. In accordance with the lease agreement between Villa and BGS, BGS received title to the backhoe upon its payment of the sales price to Kustom, and Villa took immediate possession of the backhoe. At the conclusion of the lease period, Villa had the option to purchase the backhoe from BGS for one dollar.

BGS perfected its security interest in the backhoe by filing the appropriate financing documents in compliance with the provisions of the UCC and the Vehicle and Traffic Law of the State of New York.

Plaintiff asserts that defendants are liable in strict products liability and negligence for improper design of the backhoe and for inadequate warnings relating to the operation of the backhoe.

## DISCUSSION

Simply stated, a cause of action in strict products liability lies where a manufacturer places a product on the market which has a defect that causes injury. *See Robinson v. Reed–Prentice Division of Package Machinery Co.,* 49 N.Y.2d 471, 478, 403 N.E.2d 440, 443, 426 N.Y.S.2d 717, 720 (1980). In New York, a defect in a product is established by demonstrating either a defect in manufacturing, *see Codling v. Paglia,* 32 N.Y.2d 330, 342, 298 N.E.2d 622, 628, 345 N.Y.S.2d 461, 469–70 (1973), improper design, *see Micallef v. Miehle Co.,* 39 N.Y.2d 376, 386–87, 348 N.E.2d 571, 577, 384 N.Y.S.2d 115, 121 (1976), or the inadequacy or absence of warnings for the use of the product, *see Lancaster Silo & Block Co. v. Northern*

*Propane Gas Co.,* 75 A.D.2d 55, 62, 427 N.Y.S.2d 1009, 1013 (1980).

*Improper Design*

Plaintiff asserts that the backhoe was improperly designed because it failed to include a safety strut as part of the standard equipment of the backhoe. A safety strut is a device that prevents the arm and bucket of a backhoe from lowering during the course of maintenance or repairs.

■ Under New York law, the plaintiff must demonstrate that the manufacturer failed to exercise "that degree of care in designing a product so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used as intended." There is also liability when the product is not used as intended but that use is reasonably foreseeable. *See Micallef, supra,* 39 N.Y.2d at 385–86, 348 N.E.2d at 577, 384 N.Y.S.2d at 121. The *Micallef* court defined reasonable care to require a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution that would be effective to avoid the harm. *See id.*

■ Even when the design is improper, the plaintiff must still establish that the defect was the proximate cause of his injuries. In *Voss v. Black & Decker Manufacturing Co.,* 59 N.Y.2d 102, 450 N.E.2d 204, 463 N.Y.S.2d 398 (1983), the Court of Appeals indicated that the term "proximate cause," when used in the context of strict liability, is distinct from the traditional negligence definition of proximate cause. In the former, the proximate cause relationship must be between the *product* and the injury, unlike a negligence cause of action where the plaintiff must establish a nexus between the defendant's conduct and the injury. *See id.* 59 N.Y.2d at 110, 450 N.E. 2d at 209, 463 N.Y.S.2d at 403; 1 Weinberger, New York Products Liability, § 21:05.50 (1987 Supp.). To prove proximate cause the plaintiff must show that the product defect was a "substantial

factor" in causing his injury. *See Voss,* 59 N.Y.2d at 110, 450 N.E.2d at 209, 463 N.Y. S.2d at 403.

■ The safety strut on a backhoe is a precaution to prevent the bucket from lowering when someone is under it, performing repairs or maintenance work. Whether the lack of a safety strut was a design defect need not be decided, however, because in the instant case, a safety strut would not have prevented plaintiff's injury. For Mr. Campbell to conduct tests on the hose—raising and lowering the backhoe's bucket—he would have had to remove any safety strut that was in place. The Court holds, therefore, as a matter of law, that the lack of the safety strut was not a substantial factor in causing plaintiff's injuries.

Accordingly, defendants' motions to dismiss plaintiff's claim for improper design sounding in strict products liability are granted.

For the same reason—that the lack of a safety strut did not cause plaintiff's injuries—defendants' motions to dismiss plaintiff's claim of improper design sounding in negligence are also granted.

*Inadequate Warnings*

Under the inadequate warning theory, plaintiff asserts that the backhoe was defective because there were no warnings on the backhoe advising individuals to consult the operator's manual before use or maintenance.[1]

■ As a general rule, warnings are required to alert the user of a product to avoid certain uses that appear normal and reasonable but that may, in certain instances, be dangerous. *See Lancaster Silo & Block v. Northern Propane Gas,* 75 A.D. 2d 55, 62, 427 N.Y.S.2d 1009, 1015 (4th Dep't 1980). The degree of danger is crucial in determining the specificity required in a warning. *See id.* The reasonableness or adequacy of the warnings, therefore, is generally a question of fact for the jury.

---

1. Plaintiff also contends that there should have been warnings advising persons to obtain or use a safety strut. Because the Court has already ruled that a safety strut was not the cause of plaintiff's injury, this contention is without merit.

*See id.; Wolfgruber v. Upjohn Co.,* 72 A.D.2d 59, 62, 423 N.Y.S.2d 95, 96–97 (4th Dep't 1979). If, however, the danger is obvious or if the user is or should be aware —through common sense—of a specific danger, then the Court may decide, as a matter of law, that there is no duty to warn. *See Kerr v. Koemm,* 557 F.Supp. 283–287 (S.D.N.Y.1983); *Lancaster Silo, supra,* 75 A.D.2d at 62, 427 N.Y.S.2d at 1015; *Biss v. Tenneco, Inc.,* 64 A.D.2d 204, 207–08, 409 N.Y.S.2d 874, 876–77 (4th Dep't 1978).

In the case at hand, the Court finds itself at a difficult crossroad. The danger of standing under the arm of a rising and lowering backhoe is obvious. On the other hand, the plaintiff may not have appreciated the heightened danger when Campbell operated the backhoe from the outside, rather than in the cab of the machine.

Defendants contend that any obligation on their part to warn plaintiff was discharged by the warning inside the backhoe's cab. As the facts indicate, this warning was posted in a location that, at best, would have alerted only the backhoe's operator as to the danger. It would not alert other persons to exercise caution when the backhoe was not being operated in the normal manner. The question of whether the warning was adequate is a question of fact that should be left to the jury. *See, e.g. McFadden v. Haritatos,* 86 A.D.2d 761, 762–63, 448 N.Y.S.2d 79, 81 (4th Dep't 1982); *Lancaster Silo,* 75 A.D.2d at 63, 427 N.Y.S.2d at 1015; *Wolfgruber,* 72 A.D.2d at 62, 423 N.Y.S.2d at 96–97.

The motions for summary judgment on the issue of failure to warn sounding in strict liability and negligence[2] by defendant Case and Kustom are therefore denied.

The motion for summary judgment by defendant BGS, however, is granted.

The law of New York imposes strict liability for defective products only upon manufacturers and those involved in placing a product in the stream of commerce. *See Blackburn v. Johnson Chemical Co.,* 128 Misc.2d 623, 625, 490 N.Y.S.2d 452, 454 (Sup.Ct.1985); *Nickel v. Hyster Co.,* 97 Misc.2d 770, 771, 412 N.Y.S.2d 273, 274 (Sup.Ct.1978). The latter category would include parties in the direct distribution chain such as distributors, retailers, processors and makers of component parts. *See Gobhai v. KLM Royal Dutch Airlines,* 85 A.D.2d 566, 567, 445 N.Y.S.2d 445, 446 (1st Dep't 1981); *Blackburn, supra,* 128 Misc.2d at 625, 490 N.Y.S.2d at 454. The well established rationale for imposing liability on these parties is that the burden of recompensing the injured should be spread to those parties responsible for the defect and in the best position to eliminate dangers in the future. *See Caprara v. Chrysler Corp.,* 52 N.Y.2d 114, 124, 417 N.E.2d 545, 549, 436 N.Y.S.2d 251, 255 (1981).

Here, defendant BGS acted merely as a financier enabling Villa to purchase the backhoe from Kustom. It is obvious that BGS is not in the business of manufacturing, selling, or renting backhoes; it simply provides funds to permit investments. Hence, BGS is not subject to the principles of strict products liability.

Defendant BGS's motion to dismiss the failure to warn claim sounding in negligence is also granted. Under New York law, a wholesaler, retailer or distributor can be held liable in negligence for failure to warn if it fails to detect a dangerous condition which it could have discovered during the course of a normal inspection while the product was in its possession. *See McLaughlin v. Mine Safety Appliances Co.,* 11 N.Y.2d 62, 70–71, 181 N.E.2d 430, 433, 226 N.Y.S.2d 407, 413 (1962); *Schwartz v. Macrose Lumber & Trim Co.,* 50 Misc.2d 547, 270 N.Y.S.2d 875, 886–87 (Sup.Ct.1966).

---

**2.** To state a negligence cause of action for failure to warn, plaintiff must prove, in addition to the elements necessary under strict liability, the scienter of the defendants. He must demonstrate that defendants knew or should have known the harmful character of the product without a warning. *See Lancaster Silo, supra,* 75 A.D.2d at 60, 427 N.Y.S.2d at 1015. Whether the warning was adequate and whether defendants knew of the backhoe's dangerous nature without a warning is a question for the jury.

As already indicated, BGS did not take possession of the backhoe but merely provided a service incidental or tangential to the entities that launched the product into the stream of commerce—Case, the manufacturer and Kustom, the retailer. As such, BGS was not in a position to inspect the backhoe nor was it obligated to do so. *Cf. Di Gregorio v. N.V. Stoomvaart,* 411 F.Supp. 331, 338 (S.D.N.Y.1975).

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss the claim sounding in strict products liability for improper design are granted; defendants' motions to dismiss the claim for negligent design of the backhoe are granted; the motions to dismiss the claims for failure to warn sounding in strict products liability and negligence by defendants Case and Kustom are denied; and the motion to dismiss the failure to warn claims sounding in strict products liability and negligence by BGS is granted.

SO ORDERED.