■ CARMINE FORESTA, Respondent, et al., Plaintiff, v MAKRAM A. TADROS, Appellant, et al., Defendants. (And a Third-Party Action.)—In a medical malpractice action to recover damages for personal injuries, etc., the defendant Makram Armanios Tadros appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Kings County (Miller, J.), entered June 28, 1988, as, upon a jury verdict finding him 40% at fault in causing the plaintiff Carmine Foresta's damages and finding that the plaintiff Carmine Foresta suffered damages in the amount of $809,900, is in favor of the plaintiff Carmine Foresta against him in the principal sum of $323,960.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, and the complaint is dismissed insofar as it is asserted against the appellant.

On January 22, 1980, the plaintiff Carmine Foresta, while working as an automobile mechanic, was injured when a foreign object entered his right eye. Immediately thereafter, he sought treatment for the injury at the emergency room of Good Samaritan Hospital. He was examined by the attending physician, Dr. Jacques Timothee, who inserted several drops in his right eye and prescribed an eye patch. Dr. Timothee did not take any X rays nor did he examine the eye with any mechanical instrument, other than a flashlight. Dr. Timothee also advised Mr. Foresta that, although the eye was scratched, he did not detect the presence of any foreign object in the eye. As a course of treatment, Timothee advised Mr. Foresta to apply drops to his right eye four times a day and assured him that the scratch would heal. According to the testimony adduced at the trial, Mr. Foresta applied the drops prescribed

by Dr. Timothee, and, on two or three occasions, wore the eye patch that Timothee had given him.

During the next several months, Mr. Foresta experienced headaches and tearing and noticed that his eye had become sensitive to light. His condition deteriorated and by April 1980 the vision in his right eye had become so impaired that he was no longer able to drive. On April 18, 1980, at the suggestion of a friend, he went to the Manhattan Eye, Ear & Throat Hospital, where he was referred to a specialist, the defendant Makram Armanios Tadros. Dr. Tadros tentatively diagnosed the condition as retinal detachment, a corneal ulceration, and an intraocular foreign body. Dr. Tadros ordered that an X ray be taken and prescribed antibiotic ointment and a patch to sterilize the eye pending receipt of the results of the X-ray examination. When the X-ray report was received, it revealed the presence of a foreign body in Mr. Foresta's right eye. Dr. Tadros also determined, through the use of a magnet test, that the foreign object contained iron. During the following week, Dr. Tadros continued to treat the corneal ulceration and by the time of Mr. Foresta's final consultation with Dr. Tadros, his corneal ulceration had healed completely. Dr. Tadros also referred Mr. Foresta to a Dr. Fisher, a surgeon, for further treatment.

The plaintiff Carmine Foresta consulted Dr. Fisher, who examined his eye and advised him that he would have to undergo a surgical procedure to remove the foreign object and treat the retinal detachment. After the surgery was performed, Mr. Foresta underwent a nine-month period of recovery, at the conclusion of which he returned to his place of employment.

In 1984, some four years after the surgery, Mr. Foresta developed glaucoma in his right eye, which necessitated additional surgery. Following this surgery, he was only able to see shadows with his right eye.

The plaintiffs Carmine Foresta and his wife eventually commenced the instant medical malpractice action against, inter alia, Drs. Timothee and Tadros. They attempted to establish, during the course of trial, that those physicians were negligent in failing to promptly remove the foreign object from Mr. Foresta's right eye. Their expert witness, Dr. Vivian Bonyiuk, testified, in essence, that during the period of time in which the foreign object was allowed to remain lodged in Mr. Foresta's eye, the object had rusted, which produced a condition known as siderosis. According to Dr. Bonyiuk's

testimony, the siderosis allegedly caused the glaucoma. She also testified that both physicians "were responsible to some degree, for his present condition of [Mr. Foresta's] eye".

Dr. Tadros, however, testified that it would have been imprudent to surgically remove the foreign object from Mr. Foresta's eye until his corneal ulceration had healed, because of the danger of infection. His expert witness confirmed that it was proper practice to cure the ulcer before exposing Mr. Foresta to the risks of surgery. Dr. Tadros's expert additionally testified that the glaucoma had not been precipitated by siderosis but, instead, had been caused by an injury to the blood vessels in the affected area.

At the conclusion of the trial, the jury found that Mr. Foresta sustained damages amounting to the principal sum of $809,900. It found Dr. Timothee 60% at fault and Dr. Tadros 40% at fault. Dr. Tadros now appeals.

We find merit to the appellant's contention that the verdict against him is not based upon legally sufficient evidence. Specifically, there is no proof that the medical treatment rendered by Dr. Tadros fell short of the standard of good and acceptable medical practice nor was there sufficient evidence to establish that the treatment rendered by Dr. Tadros proximately caused Mr. Foresta's injuries (see, Hunter v Szabo, 117 AD2d 778; Paul v Boschenstein, 105 AD2d 248; Filanowicz v Guarino, 27 AD2d 666). The record, instead, reveals that Dr. Tadros not only diagnosed the source of Mr. Foresta's problems and successfully treated his corneal ulceration, but also immediately referred him to a surgeon for removal of the foreign object. Additionally, the testimony of Mr. Foresta's expert was wholly inconclusive as to whether the 10-day "delay", during which Dr. Tadros treated Mr. Foresta's corneal ulcer rather than recommending the immediate removal of the foreign object, was a substantial factor contributing to Mr. Foresta's eventual loss of vision (see, Gonzales v Fuchs, 69 AD2d 831). As a result, the complaint, insofar as it is asserted against Dr. Tadros, must be dismissed.

In light of the foregoing disposition, the appellant's remaining contentions need not be addressed. Mangano, P. J., Thompson, Bracken and Eiber, JJ., concur.